IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTHER WILLIAMS** <br> 1409 Delafield Place, N.W. <br> Washington, DC 20011 <br><br> Plaintiff, <br><br> v. <br><br> **UMG RECORDINGS, INC.** <br> 10 Universal City Plaza <br> Universal City, CA 91608 <br><br> and <br><br> **AMARU ENTERTAINMENT, INC.** <br> 2850 Ocean Park Boulevard <br> Santa Monica, CA 90405 <br><br> and <br><br> **BULLSEYE RECORDS, INC.** <br> 109 Market Street <br> Durham, NC 27701 <br><br> Serve: <br><br> Secretary of State <br> Office of Department of State <br> 41 State Street <br> Albany, NY 12231 <br><br> and <br><br> **ROBERT B. CURRINGTON** <br> 109 Market Street <br> Durham, NC 27701 <br><br> Defendants. | Civil Action No. **07-714 (JDB)** <br><br> **AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Deleted: ¶

**COMPLAINT**

COMES NOW, Esther Williams, by and through counsel, and in support of the Complaint respectfully states unto this Honorable Court as follows:

1. The Plaintiff ESTHER WILLIAMS (hereinafter referred to as the "Plaintiff"), is an individual, and adult citizen of the District of Columbia.

2. The Defendant UMG RECORDINGS, INC., which also does business as Universal Music Group, Inc. and as Universal Music Corporation (hereinafter collectively referred to as "UMG"), is a corporation duly organized and existing under the laws of the State of New York, which is, and at all times pertinent hereto, actively engaged in the business of producing, distributing, selling and/or licensing the distribution and selling of sound recordings. At various times pertinent hereto, UMG has traded under several different trade names and distributed sound recordings under several different record labels including, but not limited to Def Jam Records, Island Music, Island Def Jam Music, Interscope Records, Geffen Records, Interscope, A&M Records, Interscope-Geffen-A&M, Universal Motown Records Group, Universal Music Classics Group, Universal Music Latino, Universal Music Group Nashville, Universal Records South and Verve Music Group. In the regular course of its business, UMG advertises, promotes and sells its products in Washington, D.C., and has done so continuously throughout all times pertinent hereto.

3. The Defendant AMARU ENTERTAINMENT, INC. (hereinafter "Amaru") is an entertainment company which owns and/or represents the music created by Tupac Shakur. Defendant Amaru is a corporation duly organized and existing under the laws of the State of New York. Amaru is engaged in the business of producing sound recordings, and distributing, selling and/or licensing the distribution and selling of sounds recordings. In the regular course of its

2

business, Amaru advertises, promotes and sells its products in Washington, DC., and has done so continuously throughout all times pertinent hereto.

4.  The Defendant BULLSEYE RECORDS, INC. (hereinafter Bullseye ) is a music recording company, previously duly organized, incorporated and existing under the laws of the State of New York and currently operating out of the State of North Carolina, which at all times pertinent hereto, promoted and sold its products in Washington, D.C. and in various other jurisdictions in and outside of the United States of America.

5.  The Defendant ROBERT B. CURRINGTON (hereinafter Currington ) is an individual citizen of the State of North Carolina who, at all times pertinent hereto, has held himself out to be an authorized representative of Bullseye and who, at all times pertinent hereto, has done business in Washington, D.C. and in various other jurisdictions in and outside of the United States of America.

FACTUAL ALLEGATIONS

6.  The Plaintiff has been an internationally known singer for over thirty years whose music has been licensed and published all over the world. She is the co-founder of the Washington Jazz Arts Institute, a non-profit organization dedicated to the preservation and education of jazz music in the Washington, DC area.

7.  In 1975, the Plaintiff began work as a vocalist on her first album (hereinafter referred to as an LP ), Let Me Show You, which included the song, Last Night Changed It All and which was recorded on the Bullseye Records (hereinafter referred to as Bullseye ) label, with Friends and Company and Dammit Publishing involved in the production.

8.  On December 19, 1975, the Plaintiff, prior to or during the process of recording for Bullseye, entered into a contract (hereinafter referred to simply as "the contract") with Bullseye

through which she transferred her copyright in the sound recording of the LP "Let Me Show You," including the song "Last Night Changed It All," to Bullseye in exchange for Bullseye's promise to pay to the Plaintiff royalties based on record sales and to render to the Plaintiff regular periodic accounting statements of revenue generated from such record sales. The term of the contract was one year followed by four one year consecutive one year extensions at Bullseye's option.

9. The Plaintiff's first LP "Let Me Show You" was released in 1976.

10. During her work at Bullseye, the Plaintiff gave live performances in New York, Miami and New Jersey and received performance fees for such performances.

11. Bullseye breached the contract by failing to make any royalty payments or render any accounting statements to the Plaintiff thus rendering the contract void and/or unenforceable on or before March 1, 1977, the date when the accounting for the initial year of the contract was due.

12. Since Bullseye's breach, the Plaintiff has retained the copyright in the master recording of "Last Night Changed It All." The Plaintiff has complied with all laws pertinent to registering her copyright in the master recording of "Last Night Changed It All."

13. Effective January 17, 2006, the Plaintiff received a renewal registration from the U.S. Copyright Office for her LP "Let Me Show You" (Attached as Exhibit 1). The song titled, "Last Night Changed It All," appears on the album.

14. The Plaintiff has established a pattern of exercising her rights in the sound recording by negotiating licensing agreements with other prominent artists within the industry.

15. On or about 2005, the Plaintiff discovered a song by Ghostface Killah, a rap artist, who had sampled the Plaintiff's copyrighted sound recording titled "Last Night Changed it All". The sampling, referred to in this paragraph, occurred in "Last Night Skit", a track on the Ghostface

4

Killah's "Pretty Toney" Compact Disc recording (hereinafter referred to as "CD") which was released on April 20, 2004. The CD jacket erroneously credits the Plaintiff's performance to "Esther Philips courtesy of Robinson Music Group."

16. Neither Ghostface Killah nor his representatives contacted the Plaintiff before or after the release of the CD to seek permission to sample the sound recording.

17. The CD jacket acknowledges that "Last Night Skit" contains samples from "Last Night Changed It All."

18. The Ghostface Killah track, "Last Night Skit" uses the Plaintiff's master recording for approximately 51 seconds in a song that is 2 minutes and 31 seconds in length.

19. The titles "Last Night Changed it All" and "Last Night Skit" are very similar.

20. The songs "Last Night Changed it All" and "Last Night Skit" have a similar structure and meaning.

21. According to Soundscan, the company that provides information on record sales to Billboard, the Pretty Toney CD sold 223,914 copies.

22. Because the Plaintiff is internationally recognized as the copyright holder of the song, "Last Night Changed It All," several artists who have sampled the Plaintiff's song, "Last Night Changed It All," have contacted the Plaintiff directly to receive her permission to sample the master recording.

23. Island Def Jam Music Group is, and at all times relevant hereto, was the recording label for Ghostface Killah.

24. Island Def Jam Music Group (hereinafter referred to as "Def Jam") is a wholly owned subsidiary or division of UMG.

5

25. On or about May 22, 2004, Currington, falsely representing that he authorized agent of Bullseye, entered into a contract with Island Def Jam Music Group by which Bullseye purportedly granted Def Jam a non-exclusive license to use the master recording of Last Night Changed It All.

26. Currington, at the time of entering into the contract referred to in paragraph 25, above, knew that he was not authorized to act on behalf of Bullseye and that the Plaintiff, and not Bullseye, was the owner of the copyright in the sound recording which was the subject of his contract with Def Jam.

27. The Plaintiff has also discovered that another rap artist, Tupac Shakur, without authorization, sampled the Plaintiff's song Last Night Changed It All on his recording titled, Late Night which appeared on the Better Dayz album released on November 26, 2002 on Interscope Geffen A&M Records (hereinafter referred to as "Interscope").

28. The unauthorized sampling referred to in the preceding paragraph of this complaint is extensive.

29. Amaru retains ownership of Tupac Shakur's music.

30. No representative from Amaru contacted Plaintiff before or after the release of the Better Dayz album to seek permission to sample the sound recording.

31. Prior to or during the time period in which Tupac Shakur recorded the song referred to in paragraph 27, above, Currington, falsely representing that he authorized agent of Bullseye, entered into a contract with Amaru and/or Interscope by which Bullseye purportedly granted Amaru and/or Interscope a non-exclusive license to use the master recording of Last Night Changed It All.

32. Currington, at the time of entering into the contract referred to in paragraph 31, above,

6

knew that he was not authorized to act on behalf of Bullseye and that the Plaintiff, and not Bullseye, was the owner of the copyright in the sound recording which was the subject of his contract with Def Jam.

## JURISDICTION AND VENUE

33. This is a civil action seeking damages for copyright infringement under the Copyright Act, 17 U.S.C. 101 *et seq*.

34. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. 1331 and 1338(a).

35. This Court has personal jurisdiction over the Defendants because 1) UMG, Amaru, Bullseye and Currington do continuous and systematic business in the District of Columbia, 2) UMG, Amaru, Bullseye and Currington sell records in the District of Columbia 3) all Defendants have also transacted business within the District of Columbia and contracted to supply goods or services in the District of Columbia in connection with the matters giving rise to this suit, 4) all Defendants have also committed infringing acts inside of the District of Columbia causing injury to Plaintiff in the District of Columbia, 5) all Defendants regularly do or solicit business in Washington, DC, and/or derive substantial revenue from goods used or services rendered in Washington, DC, 6) all Defendants derive substantial revenue from interstate commerce and 7) all Defendants can be presumed to reasonably expect their infringing conduct to have consequences in Washington, DC.

36. Venue is proper in this District pursuant to 28 U.S.C. 1391(b) and ( c) and 1400 (a) because the Defendants conduct business in this District and a substantial part of the events giving rise to Plaintiff s claims occurred in this District.

## COUNT I
### (Breach of Contract)

37. The Plaintiff incorporates herein by reference the factual allegations of paragraphs 1 through 36 of this complaint.

38. Through their conduct averred herein, Defendants Bullseye and Currington have breached the contract by selling, beginning in calendar year 1976, an undisclosed number of records produced from the master sound recording recorded by the Plaintiff pursuant to the contract and failing to pay royalties or provide accounting statements to the Plaintiff, based on those record sales.

39. The breaches of contract referred to in paragraph 38, above, first occurred on or before March 1, 1977, the date by which the Plaintiff was due to receive a statement on account of revenue derived from sales occurring during the first full calendar year of the contract.

40. The breaches of contract referred to in paragraphs 38 and 39, above, have been open, notorious and ongoing from March 1, 1977, through the present in that no royalty payments or accounting statements have yet been provided to the Plaintiff pursuant to the contract.

41. The breaches of contract referred to in paragraphs 38, 39 and 40, above, have been material and fundamental breaches going to the essence of the contract. The Defendants' complete failure to perform under the contract rendered the contract void ab initio or, alternatively, effective March 1, 1977.

42. The Defendants' actions and/or failures to act as required by the contract and as referred to in paragraphs 38, 39, 40 and 41, above, serve to relieve the Plaintiff from any and all duty to perform her obligations, promises and commitments as specified in the contract, including, but not limited to the transfer of her copyrights in the sound recordings produced pursuant to the contract.

43. As a direct result of the Defendant's breaches of contract referred to in paragraphs 38,

8

39, 40 and 41, above, the Plaintiff's copyrights as referred to in paragraph 42, above, reverted to the Plaintiff on or before March 1, 1977.

44. Notwithstanding and in addition to the reversion referred to in paragraph 43, above, the Plaintiff's copyrights in the sound recording at issue vested in the Plaintiff by operation of law (pursuant to the Copyright Act of 1909) effective December 31, 2002, the automatic renewal date occurring in the twenty-eighth year after the sound recording was made.

## COUNT II
(Copyright Infringement)

45. The Plaintiff incorporates herein by reference the factual allegations of paragraphs 1 through 36 of this complaint.

46. Through their conduct averred herein, Defendants have infringed the Plaintiff's copyright in the Copyrighted Sound Recording referred to herein by reproducing, adapting, distributing, and/or publicly performing audio and/or audiovisual works embodying the copyrighted material without authorization in violation of Sections 106, 115, and 501 of the Copyright Act. 17 U.S.C. 106, 115 and 501. Defendants allowed the infringement to occur, and they had an obvious and direct pecuniary interest in exploiting the copyrighted sound recording. Accordingly, Defendants are liable for direct, contributory and vicarious infringement.

47. None of the Defendants have received permission from the Plaintiff, the lawful copyright holder of the master recording of Last Night Changed it All, to sample said recording.

48. Each individual sale of product containing unauthorized samples of Plaintiff's copyrighted sound recording constitutes a separate and distinct act of infringement by the Defendants.

49. Defendants acts of infringement have been willful, intentional, and purposeful. By

Deleted:
Deleted: 44

reason of the infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to her rights in the Copyrighted Sound Recording.

50. As a direct and proximate result of Defendants' infringement of the Plaintiff's exclusive rights under copyright, the Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. 504 ) for each work infringed in the amount of $150,000 or for such other amounts that may be proper under 17 U.S.C. 504 ). Alternatively, at the Plaintiff's election, pursuant to 17 U.S.C. 504(b), the Plaintiff shall be entitled to her actual damages plus Defendants' profits from infringement, as will be proven at trial. If necessary, the Plaintiff will seek leave to amend this complaint to state the full amount of such damages and profits when such damages have been ascertained.

51. The Plaintiff is entitled to her costs, including reasonable attorneys' fees pursuant to 17 U.S.C. 505.

52. The Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause the Plaintiff great and irreparable injury that cannot be fully compensated or measured in money damages. The Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. 502, the Plaintiff is entitled to a permanent injunction requiring the Defendants to employ reasonable methodologies to prevent or limit infringement of the Plaintiff's Copyrights.

COUNT III
(False Light)

53. The Plaintiffs incorporate herein by reference the factual allegations of paragraphs 1 through 36 of this complaint and pleads, in the alternative, the following allegations.

*Deleted: 52*

54. Ghostface Killah's track, "Last Night Skit," contains extremely graphic sexual and

10

violent language. Because the Plaintiff's voice, via the master recording, is sampled, the impression is given to the listener that she condones and agrees with the degrading messages and lyrics. Despite the lewd lyrics of the Ghostface Killah version, "Last Night Changed it All" is a song about female independence and breaking away from the bondage of overbearing men. "Last Night Skit" turns this message on its head by using vulgar and graphic language to insult the woman who is not returning the man's phone calls.

55. When Ghostface Killah and Tupac Shakur sampled songs belonging to the Plaintiff, she suffered embarrassment, and mental and emotional distress.

56. The language used by Ghostface Killah and Tupac Shakur in their music is highly offensive to Plaintiff. Given the highly offensive language in their music, the Plaintiff would not have given permission to sample her master recording.

57. Because the Plaintiff has been recognized in the musical community for many years, she is well known for her song, "Last Night Changed it All."

58. The Plaintiff's reputation has been compromised as a result of the unauthorized use of her voice in the Ghostface Killah song, "Last Night Skit."

59. By reason of the False Light herein alleged, the Plaintiff requests damages in the amount of $10,000,000.

COUNT IV
(Violation of Right of Publicity)

60. The Plaintiff incorporates herein by reference the factual allegations of paragraphs 1 through 36 of this complaint and pleads, in the alternative, the following allegations. [Deleted: 59]

61. The Plaintiff's voice in "Last Night Skit" is very recognizable.

62. Plaintiff has licensed her music to many well-known individuals within the music

11

industry and she is a well-known figure in the international music community.

63. The Plaintiff has a clearly established pecuniary interest in the marketing and distribution of recordings of her voice.

64. Both Defendants commercially exploited the Plaintiff's identity by reproducing and distributing sound recordings of her voice without authorization from the Plaintiff.

65. By reason of the violation of the Right of Publicity herein alleged, the Plaintiff requests damages in the approximate amount of $10,000,000.

**WHEREFORE,** the Plaintiff prays:

1. For a declaration that Defendants Bullseye and/or Currington materially breached the December 19, 1975 contract between Bullseye and the Plaintiff such that either the contract was void ab initio with the Plaintiff having at all times retained ownership of the copyrights in the sound recording entitled "Last Night Changed It All," or that the contract terminated on or before March 1, 1977, and that upon such termination, the aforementioned copyrights reverted to the Plaintiff.

2. For a declaration that Defendants willfully infringed on Plaintiff's copyrights.

3. For an award to the Plaintiff of costs and reasonable attorneys fees pursuant to 17 U.S.C. 505.

4. For a permanent injunction requiring that Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each of any of them, cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of, any of Plaintiff's respective copyrights or exclusive rights protected by the Copyright Act, whether now in existence or hereafter created.

5. For statutory damages pursuant to 17 U.S.C. 504( c ). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. 504(b), for actual damages plus Defendants' profits from infringement, as will be proven at trial.

6. For an order finding that Defendants are jointly and severally liable for direct, contributory and/or vicarious infringement.

7. For an order that the Defendants submit to an accounting so that all gains, sales and profits by Defendants from each of their acts and/or omissions may be determined.

8. For pre-judgment and post-judgment interest according to law.

9. For damages related to Plaintiff's claim for Breach of Contract.

10. For damages related to Plaintiff's claim for False Light.

11. For damages related to Plaintiff's claim for Violation of the Right of Publicity.

12. For such other and further relief as this Honorable Court deems just and proper.

<u>REQUEST FOR JURY TRIAL</u>

The Plaintiff hereby requests a trial by jury as to all issues.

Respectfully Submitted,

_____/s/_____
Bradley A. Thomas, Unified Bar No. 362656
The Law Offices of BRADLEY A. THOMAS
1629 K Street, N.W
Suite 300
Washington, DC 20006-1631
(202) 289-7574
(202) 289-5055 (facsimile)
batlaw@bradleythomaslaw.com