UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**ESTHER WILLIAMS**         )
                         )
          Plaintiff,        )
                         )
     v.                  )        Case No. **07-00714 (JDB)**
                         )
**UNIVERSAL MUSIC GROUP, INC. et al**   )
                         )
         Defendants.     )

## OPPOSITION TO DEFENDANT CURRINGTON'S
## MOTION TO DISMISS FRIVOLOUS LAWSUIT

The Plaintiff, ESTHER WILLIAMS, by and through counsel and pursuant to the Federal Rules of Civil Procedure, respectfully opposes the Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit filed in the above captioned case.  As grounds for this opposition, the Plaintiff states as follows:

1.      The Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit fails to state any legal basis upon which the relief sought can be granted.

2.      The Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit merely states the movant's position as to factual disputes which are clearly in the purview of the finder of fact to decide.

3.      The Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit, taken in the light most favorable to the movant, fails to identify any basis for dismissal under Rule 12(b) of the Federal Rules of Civil Procedure.

4.      Even if the Court were to treat it as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit fails to establish through the pleadings (there being no depositions, answers to

interrogatories, admissions or affidavits on file with this Court or attached to the defendant's motion)
that there is no genuine issue as to any material fact and that the movant is entitled to judgment as
a matter of law.

WHEREFORE, the premises considered, the Plaintiff prays that this Court deny the
Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit and award costs, including
reasonable attorneys fee incurred by the Plaintiff in responding to the defendant's motion to the
Plaintiff.

Respectfully submitted,


_____/s/_____
Bradley A. Thomas, Bar No. 362656
1629 K Street, N.W., Suite 300
Washington, DC 20006-1631
(202) 289-7574
(202) 289-5055 (Facsimile)
batlaw@bradleythomaslaw.com


_____/s/_____
Natalie M. Koss, Bar No. 489551
HENRICHSEN SIEGEL, PLLC
1150 Connecticut Ave., N.W.
Washington, DC 20036-4129
(202) 293-7766
(202) 379-9792 (Facsimile)
nkoss@hslawyers.com


CERTIFICATE OF SERVICE

I hereby certify that true and accurate copies of the foregoing Opposition To Defendant
Robert Currington's Motion To Dismiss Frivolous Lawsuit, and the attached memorandum in
support thereof, were served, on this 16th day of JUNE, 2008, on the following parties by the

methods hereafter indicated:

by first class mail on:

Robert B. Currington
1410 Rosewood Street
Durham, NC 27701-4714

and by electronic mail on:

Lisa J. Savitt, Esq.
AKERMAN SENTERFITT, LLP
801 Pennsylvania Ave., N.W., Suite 600
Washington, DC 20004
(202) 585-6203 (facsimile)

Brian A. Bloom
AKERMAN SENTERFITT, LLP
325 Madison Ave., Suite 2600
New York, NY 10017
(212) 880-8965 (facsimile)

Donald N. David
AKERMAN SENTERFITT, LLP
325 Madison Ave., Suite 2600
New York, NY 10017
(212) 880-8965 (facsimile)

_____/s/_____

Bradley A. Thomas

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTHER WILLIAMS** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. **07-00714 (JDB)** |
| | ) |
| **UNIVERSAL MUSIC GROUP, INC. et al** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF OPPOSITION TO DEFENDANT CURRINGTON'S
## MOTION TO DISMISS FRIVOLOUS LAWSUIT

In support of her <u>Opposition To Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit</u>, the Plaintiff, ESTHER WILLIAMS, by and through counsel, hereby submits the following:

FACTUAL BACKGROUND:

1.      Pursuant to the initial scheduling order issued by this Court, the Plaintiff filed an Amended Complaint on October 19, 2007.

2.      On November 28, 2007, the Plaintiff, through private process server, effected personal service on the Defendant Robert Currington (hereinafter referred to as "Currington") at his home.  The Affidavit and Return of Service affirming service on Currington was filed on December 12, 2007.  This Court's docket entries indicate that Currington's answer to the Plaintiff's Amended Complaint was due on December 18, 2007, but that answer was not filed until February 21, 2008, after the Plaintiff sought Court intervention.

3.      Currington, in filing his answer to the Amended Complaint, failed to raise any of the mandatory or permissible defenses under Rule 12(b) of the Federal Rules of Civil Procedure but

4

simply responded to each of the enumerated claims set forth in the Plaintiff's Amended Complaint.

4.    On May 29, 2008, Currington failed to appear for a scheduled Status Conference but when reached by telephone by the Court's Courtroom Clerk, indicated that he would be filing a motion to dismiss. He apparently did so that same day, naming such motion "Motion To Dismiss Frivolous Lawsuit."

LEGAL ARGUMENT:

Currington's motion contains no legal arguments but merely recites the movant's position that the document he attached to the motion establishes that the Plaintiff's claims are "frivolous, untrue and outlandish." (See Currington's Motion at page 2.) Currington acknowledged, however, in his deposition (see Exhibit 1-select passages from the May 15, 2008 deposition of Currington) and in his response to a Request For Admission Of Facts (see Exhibit 2) that he can not verify the authenticity of the document he asserts to be the contract between the Plaintiff and Bullseye Records, Inc. Given that the Plaintiff does not concede that the copy of the document attached to Currington's motion is an unaltered copy of the document she signed in 1975, a genuine issue as to a very material fact clearly does exist. That being the case, Currington is not entitled to summary judgment in his favor. See <u>Sturdivant v. Seaboard Serv. Sys.</u>, App. D.C., 459 A.2d 1058 (1983).

Furthermore, Currington's references to copyright filings, album cover credits and mechanical licenses go to the heart of the factual dispute at issue. Currington has failed to submit any affidavits, even his own, establishing that his position on any of these matters is uncontroverted. The burden of demonstrating "the absence of any factual issue" is borne by the moving party. <u>Nader v. de Toledano</u>, App. D.C., 408 A.2d 31 (1979), cert. denied, 444 U.S. 1078, 100 S. Ct. 1028, 62 L. Ed. 2d 761 (1980).

Aside from summary judgment, the only other reasonable interpretation of Currington's motion is to presume it to be a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For purposes of such a motion, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. <u>McBryde v. Amoco Oil Co.</u>, App. D.C., 404 A.2d 200 (1979); <u>Cauman v. George Washington University</u>, App. D.C., 630 A.2d 1104 (1993). A complaint may not be dismissed under this rule unless it appears that the plaintiff can prove no facts in support of the claim which would entitle the plaintiff to relief. <u>Vincent v. Anderson</u>, App. D.C., 621 A.2d 367 (1993). In the instant case, the Plaintiff has properly pled, in her Amended Complaint, that she entered into a contract with Bullseye Records but that Bullseye breached that contract and that subsequently, she registered her copyright in the song recorded under the original contract. She also pled that her voice was sampled, illegally and without proper authorization, resulting in damage to her reputation, and that Currington was a party to that illegal and unauthorized sampling. Taking these allegations as true, which is the standard in evaluating a 12(b)(6) motion to dismiss, Currington's motion must fail.

CONCLUSION:

The claims raised by Currington in his Motion To Dismiss Frivolous Lawsuit are based on factual assertions that must be decided by the trier of fact. Currington's motion is without legal basis and should be summarily denied.

Respectfully submitted,

_____/s/_____
Bradley A. Thomas, Bar No. 362656
1629 K Street, N.W., Suite 300
Washington, DC 20006-1631
(202) 289-7574

6

(202) 289-5055 (Facsimile)
batlaw@bradleythomaslaw.com


_____/s/_____
Natalie M. Koss, Bar No. 489551
HENRICHSEN SIEGEL, PLLC
1150 Connecticut Ave., N.W.
Washington, DC 20036-4129
(202) 293-7766
(202) 379-9792 (Facsimile)
nkoss@hslawyers.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**ESTHER WILLIAMS**                    )
                                       )
           Plaintiff,                )
                                       )
     v.                               )            Case No. **07-00714 (JDB)**
                                       )
**UNIVERSAL MUSIC GROUP, INC. et al**   )
                                       )
          Defendants.               )

## <u>ORDER</u>

      This matter, having come before this Court upon the Defendant Robert Currington's Motion

To Dismiss Frivolous Lawsuit, and upon consideration of the Motion, the Opposition thereto, the

Points and Authorities and the entire record herein, it is, on this _____ day of _____,

20___

      ORDERED, that the Defendant Robert Currington's Motion To Dismiss Frivolous Lawsuit

be, and the same is, hereby DENIED.

                                     _____

                                     JOHN D. BATES, United States District Judge

cc:    Bradley A. Thomas, Esq.
       Law Offices of Bradley A. Thomas
       1629 K Street, N.W., Suite 300
       Washington, D.C. 20006-1631

       Natalie M. Koss, Esq.
       HENRICHSEN SIEGEL, PLLC
       1150 Connecticut Ave., N.W.
       Washington, DC 20036-4129
       (202) 293-7766
       (202) 379-9792 (Facsimile)

       Lisa J. Savitt, Esq.
       AKERMAN SENTERFITT, LLP
       801 Pennsylvania Ave., N.W., Suite 600
       Washington, DC 20004

Brian A. Bloom, Esq.
AKERMAN SENTERFITT, LLP
325 Madison Ave., Suite 2600
New York, NY 10017

Donald N. David, Esq.
AKERMAN SENTERFITT, LLP
325 Madison Ave., Suite 2600
New York, NY 10017

Robert B. Currington
1410 Rosewood Street
Durham, NC 27701

# EXHIBIT 1

Defendant Robert Currington's Deposition Transcript-
Pages 1-4, 19-22 and 87-89.

1

1               ROBERT B. CURINGTON

2         UNITED STATES DISTRICT COURT

3        FOR THE DISTRICT OF COLUMBIA

4

5  - - - - - - - - - - - - -x

6  ESTHER WILLIAMS,        :

7       Plaintiff,     :   Civil Action No.

8    vs.           :   07-00714(JDB)

9  UMG RECORDINGS, INC., ET AL.,:

10      Defendants.    :

11  - - - - - - - - - - - - -x

12

13       DEPOSITION OF ROBERT B. CURINGTON

14

15

16                 Washington, DC

17                 Thursday, May 15, 2008

18

19

20  REPORTED BY:

21    JULIE BAKER, RPR, CRR

22

23

24

25

2

1                    ROBERT B. CURINGTON

2      Deposition of ROBERT B. CURINGTON, called for

3  examination pursuant to notice of deposition, on

4  Thursday, May 15, 2008, in Washington, DC, at the

5  law offices of Bradley A. Thomas, 1629 K Street NW,

6  Suite 300, at 10:12 a.m., before JULIE BAKER, a

7  Notary Public within and for the District of

8  Columbia, when were present on behalf of the

9  respective parties:

10

11          BRADLEY A. THOMAS, ESQ.

12          The Law Offices of Bradley A. Thomas

13          1629 K Street NW, Suite 300

14          Washington, DC 20006

15          202-289-7574

16          batlaw@bradleythomaslaw.com

17          On behalf of Plaintiff

18

19

20

21

22

23

24

25

3

```
1                    ROBERT B. CURINGTON
2               P R O C E E D I N G S
3  Whereupon,
4                    ROBERT B. CURINGTON
5  was called as a witness and, having first been duly
6  sworn, was examined and testified as follows:
7                    EXAMINATION
8            BY MR. THOMAS:
9       Q    Good morning, Mr. Curington.
10      A    Good morning.
11      Q    My name is Bradley Thomas.  I'm one of the
12  attorneys representing Esther Williams in the case
13  of Esther Williams versus UMG Recordings, Inc., et
14  al., which is now pending in the District Court
15  of -- the United States District Court for the
16  District of Columbia.
17           You are here today to give testimony under
18  oath in a deposition.  Have you ever been deposed
19  before?
20      A    Of course.
21      Q    You're familiar with the process.  I'll be
22  asking you a series of questions.  Your answers will
23  be taken down by the court reporter who's sitting on
24  your right.  I'd just ask you to give your best and
25  honest answers to those questions.  If you do not
```

4

                    ROBERT B. CURINGTON

1

2   understand a question, you can stop me and ask me to

3   clarify the question so that there's no confusion.

4   If you're ready, we'll begin.

5        A    I'm ready.

6        Q    What is your full name?

7        A    Robert Berenic Curington.

8        Q    Can you spell that?

9        A    C-u-r-i-n-g-t-o-n.

10        Q    Can you spell your middle name?

11        A    B-e-r-e-n-i-c.

12        Q    What is your current address?

13        A    1410 Rosewood Street, Durham, North

14   Carolina.

15        Q    What's the zip code?

16        A    27701.

17        Q    What is your phone number?

18        A    687-0094, area code 919.

19        Q    Do you have a separate business phone

20   number?

21        A    699-2445.

22        Q    That's with the same area code?

23        A    Correct.

24        Q    What is your current marital status?

25        A    I'm married.

19

1                  ROBERT B. CURINGTON

2       Q    When did you first meet Joe Wheeler?

3       A    I never met him.  I spoke to him on the

4  telephone several times.

5       Q    When did you have the first conversation

6  on the phone with Joe Wheeler?

7       A    It might have been three or four years

8  ago.

9       Q    Meaning 2004, 2005?

10      A    Maybe as early as 2003.

11      Q    Now, then, am I correct to conclude from

12  what you've just told me that you didn't have any

13  role in the 1975 Esther Williams recording of the

14  song "Last Night Changed It All"?

15      A    Nope, no role.

16      Q    Do you happen to know just from your

17  conversations with Mr. Bonanno or anyone else the

18  address of the studio where that song was recorded?

19      A    Nope.

20      Q    And of course, you weren't physically

21  present in the studio when the song was recorded?

22      A    Nope.

23      Q    Did you have any role in the marketing of

24  the sale or distribution of that song?

25      A    He tried to get us to market it.  It only

20

ROBERT B. CURINGTON

1

2  sold 14 copies.  Mr. Bonanno had an independent

3  distributorship.  He was not with a major, and

4  that's a deathblow to most people in the music

5  business.  If you're not with a CBS, RCA or Buddha

6  or Columbia, you couldn't sell it.

7      Q   So you didn't get involved with selling

8  that record?

9      A   It didn't sell.  It sold 14 copies so why

10  we going to bother with it?  There's nothing there.

11      Q   But you said that he did approach you

12  about doing that?

13      A   No, recording something new on his artist.

14      Q   But he never approached you about helping

15  to distribute that song?

16      A   No.  It was a dud.

17      Q   With respect to that song recorded in '75,

18  you were not a party to any contract negotiations

19  between BullsEye and Esther Williams?

20      A   Nope.

21      Q   Or any contract negotiations between

22  Friends & Company and Esther Williams?

23      A   Nope.

24      Q   And of course, it logically follows you

25  didn't witness her signing any contract for that

21

ROBERT B. CURINGTON

1

2  song?

3      A    Nope.

4      Q    Were you ever a party to any contract

5  negotiations between BullsEye and Joe Wheeler?

6      A    I seen a contract from -- I seen an

7  agreement between them and Joe Wheeler and those

8  people, yes.

9      Q    But I'm asking you you weren't a party to

10  any negotiations --

11      A    No, I wasn't in the party.

12      Q    -- in other words, you weren't in the room

13  saying give them this; don't give them that?

14      A    Nope.

15      Q    And likewise, you weren't involved in any

16  contract negotiations between Friends & Company and

17  Joe Wheeler; correct?

18      A    Huh-uh.

19      Q    And you didn't personally witness Joe

20  Wheeler sign any contract?

21      A    Huh-uh.

22      Q    Do you currently have in your possession,

23  either with you today or in your home or in your

24  office, any contract signed by Esther Williams and

25  any authorized representative of BullsEye or Friends

22

ROBERT B. CURINGTON

1

2    & Company?

3        A    Only the one that she gave up.

4        Q    Have you ever had any contract signed by

5    Esther Williams and any representative of Friends &

6    Company?

7        A    Only the one that she gave up.

8        Q    Do you have in your possession, either

9    with you or in your home or in your office, any

10   contract signed by Joe Wheeler and any authorized

11   representative of BullsEye or Friends & Company?

12       A    I had and I have seen it and I have passed

13   it on to Universal.  I've passed it on to five

14   lawyers.  I've given it to Joe Wheeler.  I've given

15   to Joe Waite.  I've passed out enough of them to

16   wall his house up to show that he gave his

17   publishing away to Joe Bonanno, and let me explain

18   how that is because I think you are a novice in this

19   part of the business.

20            In 1976 white Americans did not go into

21   the studio and record an unknown artist, give them

22   the writers, the publishing and all of that free.

23   You had to give up something.  Even into the market

24   today if you give somebody to use your song, you're

25   going to want 50 or 75 percent of it.  He had to

87

ROBERT B. CURINGTON

1       If she can prove to me, the Judge says

2   she's got something coming because they use her

3   vocal we'll pay for that.  But then she'll have to

4   pay to recoup for every -- they have recoup every

5   dime she's got.  That's to include the $10,500, the

6   5 she got from Sanctuary and the 5500 she got from

7   the Japanese.  That's what it means.  And what I was

8   seeking, I know if a publisher can do whatever he

9   want to do with the song to be the publisher.  But

10  this gray matter of whether this little skit where

11  her vocal was in there that it's entitled for her to

12  give a penny or such, give it to her.  She needed

13  all she can get.

14      Q    Do you have the original contract you're

15  referring to?

16      A    What original contract?

17      Q    The original contract by which you

18  claim --

19      A    That doesn't matter.  It's the contract

20  she submitted.

21      Q    Do you have the original contract?

22      A    How would I have it?

23      Q    Then the answer is?

24      A    Yes.  Why would I have it?

88

ROBERT B. CURINGTON

1    Q   You're unaware of any living witnesses to

2 the execution of the document that you claim is a

3 copy of the signed contract?

4    A   There could be.  Anne Bellisino might have

5 saw it.  The attorney who drew it up for Joe might

6 have saw it or Joe's brother might have seen it, but

7 that won't waltz what she's trying to put.  It will

8 be in it if we go to jury trial because she

9 submitted it.

10    Q   Do you have any verification that that's

11 an authentic contract?  Can you authenticate that

12 contract?

13    A   I think it's authenticated because she had

14 it and that little girl think she's talking about

15 that's not the contract she signed.  If this ain't

16 the contract, what are we sitting here for?

17    Q   You have no other document, other than

18 that copy of that copy of a contract?

19    A   Again, I had nothing to do with her

20 business.  She submitted this.

21    Q   And she submitted it to the court?

22    A   She submitted it.

23    Q   She submitted it to whom?

24    A   She submitted it to the Japanese.  She

89

ROBERT B. CURINGTON

1

2   represented to the Japanese that -- the Japanese got

3   the same contract.

4       Q   You're referring to which contract?

5       A   This contract here.  It says clearly that

6   she belongs to BullsEye, Friends & Company and

7   Damit, they own it, can do whatever they choose to

8   do with it.

9       Q   In interrogatory 16 you were asked to

10  "Describe in detail the manner and means whereby you

11  market, assign, license, franchise, distributes

12  goods or otherwise derive income from the use of the

13  sound recording."  Are you involved in any way with

14  any of that?

15      A   In any of what?

16      Q   In the marketing, assigning, licensing,

17  franchising, distributing of goods for the use --

18      A   I would sign a license if someone makes me

19  an offer.

20      Q   Other than that, you're not involved?

21      A   What other way could you be involved?

22  It's a dead record.

23      Q   17 refers to payments given to you, but

24  we've already discussed that at some length.  There

25  were no other payments given to you for the

# EXHIBIT 2

Defendant Robert Currington's Response to Plaintiff's First
Request For Admission Of Facts

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**ESTHER WILLIAMS**                     )
                                        )
      Plaintiff,                 )
                                        )
      v.                          )    Case No. 07-00714 (JDB)
                                        )
**UNIVERSAL MUSIC GROUP, INC. et al**   )
                                        )
      Defendants.                )

### PLAINTIFF'S FIRST REQUEST FOR ADMISSION OF FACTS

To:   **ROBERT B. CURRINGTON**

The Plaintiff, ESTHER WILLIAMS, by and through counsel and pursuant to Fed. R. Civ.

Proc. Rule 36, respectfully requests that the above named party admit to the truth of the following

matters by serving a response to this request on the Plaintiff's counsel, Bradley A. Thomas, Esq., at

the LAW OFFICE OF BRADLEY A. THOMAS, 1629 K Street, N.W., Suite 300, Washington, D.C.

20006-1631, on or before the later of the 30th day after service of this Request.

### INSTRUCTIONS AND DEFINITIONS

a.  The pronouns "you", "your" and "yours" refer to the above named party and all of her

agents, assigns, designees, employees, representatives, successors-in-interest and, unless otherwise

privileged, her attorneys.

b.  The term "document" means without limitation, the front and back, whether printed, typed

or handwritten, of the originals and all copies not absolutely identical thereto, whether produced by

photocopying, photography, audio or video tape recording or computer or digital simulation, of any

account records, agreements, brochures, checks, circulars, communications, contracts,

correspondence, diaries, drafts, drawings, file cards, financial records, graphs, indices, ledgers,

letters, logs, memoranda, minutes, notebooks, note charges, notes, opinions or reports of consultants,



DEPOSITION
EXHIBIT
17
Currington

pamphlets, photographs, plans, press releases, receipts, receipts, reports, rules, sketches, statements, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, summaries or report: investigations and negotiations, tape recordings, telegrams, video productions and any and all writings.

c. The terms "relating to", "related to" and "relates to" mean embodying, reflecting ,identifying, stating, referring to, describing or pertaining to in any way.

d. Please set forth, in specific detail, the grounds, including any claim of privilege, for objection to the request for admission to any of the statements set forth below.

e. This Request is continuing in nature so as to require you to file supplemental response if you obtain further or differing information at any time prior to trial.

## SPECIFIC REQUESTS

Please admit or deny each of the following:

1.     You were not associated with Bullseye Records, Inc. in December 1975 when Plaintiff Esther Williams, recorded the song "Last Night Changed It All; I Really Had A Ball" in the album "Let Me Show You."

**Answer:** Incorrect

2.     You were not associated with Friends and Company in December 1975 when Plaintiff Esther Williams, recorded the song "Last Night Changed It All; I Really Had A Ball" and the album "Let Me Show You."

**Answer:** Incorrect

3.     You were not a party to any recording contract negotiations between the Plaintiff Esther Williams and Friends and Company, Bullseye Records, Inc. and/or Joseph Bonnano.

**Answer:** correct

4.     You did not act as the agent of either party during the 1975 contract negotiations between the Plaintiff Esther Williams and Friends and Company, Bullseye Records, Inc. and/or Joseph Bonnano.

**Answer:** correct

5.     You did not witness the December 1975 signing of any contract between

the Plaintiff Ester Williams and Friends and Company, Bullseye Records, Inc. and/or Joseph Bonnano.

**Answer:** correct

6.    You did not compose the song "Last Night Changed It All; I Really Had A Ball."

**Answer:** correct

7.    To the best of your knowledge, information and belief: the song "Last Night Changed It All; I Really Had A Ball" was composed by Joseph Wheeler.

**Answer:** correct

8.    At no time did Joseph Wheeler assign to you his copyright in the composition of the song "Last Night Changed It All; I Really Had A Ball." to you.

**Answer:** incorrect (He assign 100% to Joe Bannano of Dammit Publishing)

9.    You have no documents signed by Joseph Bonnano or any authorized representative of Bullseye Records, Inc., transferring any publishing rights to the song "Last Night Changed It All; I Really Had A Ball" to you.

**Answer:** incorrect

10.    You have no documents signed by Joseph Bonnano or any authorized representative of Bullseye Records, Inc., transferring any mechanical rights to the song "Last Night Changed It All; I Really Had A Ball" to you.

**Answer:** incorrect

11. You never signed any document purporting to assign any rights to the song "Last Night Changed It All; I Really Had A Ball" to Amaro Entertainment, Inc.

**Answer:** Esther has no standing in the matter.

12.    You signed a licensing agreement with The Island Def Jam Music Group with regard to the song "Last Night Changed It All; I Really Had A Ball" on the June 22, 2004.

**Answer:** correct

13.    You knew on June 22, 2004 when you signed the licensing agreement with The Island Def Jam Music Group, that you did not own the master recording of the song

"Last Night Changed It All; I Really Had A Ball."

**Answer:** incorrect (50% Ashley Brooks, 50% Temporal Music)

14.     You knew, on June 22, 2004, when you signed the licensing agreement with The Island Def Jam Music Group, that you did not own the distribution rights to the song "Last Night I, Changed It All; I Really Had A Ball."

**Answer:** I do own 50% of the copyright and 100% of master use with Bulleye Records.

15.     You knew, on June 22,2004, when you signed the licensing agreement with The Island Def Jam Music Group, that you did not own the distribution rights to the song "Last Night I, Changed It All; I Really Had A Ball."

**Answer:** Same as above

16.     You knew, on June 22, 2004, when you signed the licensing agreement with The Island Def Jam Music Group, that you did not own the publishing rights to the song "Last Night' Changed It All; I Really Had A Ball."

**Answer:** 50%, 50% with Temporal Music. Approved by BMI.

17.     For signing the licensing with The Island Def Jam Music Group on June 22, 2004, you received a non-refundable advance on royalties in the amount of $2,500.00.

**Answer:** correct

18.     You never paid any portion of the $2,500.00 advance you received by signing the licensing agreement with The Island Jam Music Group to either Joseph Wheeler or the Plaintiff Esther Williams.

**Answer:** correct

19.     You have no documents indicating that the Plaintiff Esther Williams ever received any royalty payments with Friends and Company, Bullseye Records, Inc. or Joseph Bonnano for her contribution to the song "Last Night Changed It All; I Really had Ball" and/or the album "Let Me Show You."

**Answer:** correct, the album or disc never **RECOUP** a dime.

20.     You do not know of any witnesses who can testify truthfully that the Plaintiff Esther Williams ever received any royalty payments from Friends and Company, Bullseye Records, Inc. or Joseph Bonnano for her contribution to the song "Last Night Changed It All; I Really Had A Ball."

**Answer:** correct, but she fraudulently collected $5000 from Sanctuary Music and $5500 from Japan.