## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

ESTHER WILLIAMS,

    Plaintiff,

      v.

ROBERT CURINGTON,[1]

    Defendant.

</td><td>

Civil Action No.  07-0714 (JDB)

</td></tr>
</table>

### MEMORANDUM OPINION

Plaintiff Esther Williams brings this action against defendant Robert Curington.[2]  The dispute concerns the rights to Williams's 1975 recording of the song "Last Night Changed It All (I Really Had A Ball)."  Williams claims that she has held the copyright to the sound recording of the song since 1977, but Curington claims that he holds the copyright.  In the mid-2000s, Curington sold non-exclusive licenses for the sound recording to Island Def Jam Music Group ("Def Jam") and Interscope Geffen A&M Records ("Interscope").  Williams asserts claims against Curington for copyright infringement pursuant to the Copyright Act of 1909[3] ("Copyright Act"), as well as common law claims for breach of contract, false light, and violation of the right

---

[1] The Court adopts the spelling of defendant's name used in his motion for summary judgment.

[2] All of the original defendants to this action other than Curington have either reached settlement agreements with Williams or otherwise been dismissed from the case, leaving Curington as the sole remaining defendant.

[3] The Copyright Act of 1909 governs copyrighted works created before 1978.  See Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1325 (9th Cir. 2000); 17 U.S.C. § 301(a).

of publicity.  Currently before the Court is a motion for summary judgment from Curington.  For

the reasons discussed below, this motion will be granted in part and denied in part.

## BACKGROUND

Williams is a singer who recorded her first album, "Let Me Show You," on the Bullseye

Records label ("Bullseye") in 1975.  Am. Compl. ¶ 7.  This album included the song "Last Night

Changed It All."  Id.  At issue in this case are Curington's allegedly impermissible grants of non-

exclusive licenses to sample that song to Interscope around 2002 and to Def Jam in 2004.  See

id. ¶¶ 25, 27, 31.  Williams's and Curington's accounts of the ownership history of the sound

recording to "Last Night Changed It All" differ markedly and form the core of their dispute.

Curington and Williams agree that on December 19, 1975, Williams entered into a

contract with Bullseye with respect to her recordings with the company.  Id. ¶ 8; Curington

Mem. at 3.  At this point, however, their stories diverge.  Williams contends that, through her

contract with Bullseye, she transferred her copyright in the sound recording of "Last Night

Changed It All" to the company.[4]  Am. Compl. ¶ 8.  In exchange, she claims that Bullseye

promised to pay her royalties based on record sales and render her regular periodic accounting

statements of revenue generated from these sales.  Id.  Williams asserts that the term of the

contract was one year followed by four one-year consecutive extensions at Bullseye's option.  Id.

According to Williams, she immediately asked for a copy of the signed contract, but was not

provided with a copy until several months after signing.  Williams Aff. ¶¶ 10-11.  She contends

---

[4] Although Williams does not discuss how she initially obtained the copyright to the
sound recording of "Last Night Changed It All," based on her version of events, it appears that
ownership would have automatically vested in her as the author of the work, pursuant to the
Copyright Act.  See Pub. L. 80-281 § 9, 61 Stat. 652, 655 (1947).

that this copy of the contract contained several terms that were not discussed previously and that she did not recall being in the original copy that she signed. Id. ¶ 11. Curington was allegedly absent from the contract signing and all related discussions, and was in no way affiliated with Bullseye at this time. Id. ¶¶ 13-16; see Wheeler Aff. ¶ 9; Drennen Aff. ¶ 10.

Williams alleges that Bullseye breached its contract with her by failing to make any royalty payments or render any accounting statements to her. Am. Compl. ¶ 11. Thus, according to Williams, her contract with Bullseye was either void or unenforceable on or before March 1, 1977. Id. Williams contends that since that date, she has retained the copyright to the master recording of "Last Night Changed It All." Id. ¶ 12. In support of her contention, Williams points to a Certificate of Registration from the U.S. Copyright Office -- effective, January 17, 2006 -- which shows that she was a renewal claimant for the copyright of the "Last Night Changed It All" sound recording. Pl.'s Opp'n, Ex. 3. She highlights the fact that the Copyright Office itself sent her the application. Am. Compl. ¶ 13.

Curington, on the other hand, contends that Williams never held the copyright to "Last Night Changed It All" because she was a "work for hire" employee at Bullseye. Curington Mem. at 2. Hence, he alleges that Bullseye always held the copyright to the sound recording of "Last Night Changed It All."[5] See id. Moreover, he contends that the contract Williams signed with Bullseye provided for Bullseye's ownership of "Last Night Changed It All." Id. Curington has produced a contract between Williams and Bullseye, signed on December 19, 1975, that gave Bullseye "the sole, exclusive and perpetual ownership of and in masters made hereunder,

---

[5] Under the Copyright Act, an employer is the "author" of a "work[] made for hire." Pub. L. No. 60-349, § 62, 35 Stat. 1075, 1087 (1909).

including, but not limited to, all master recordings" produced by Williams for Bullseye.[6]
Curington Mot., Ex. D ¶ 5(A)(v).  The contract also provides that "recording costs and all
payments to [Williams], if any, with respect to the recordings made hereunder, shall be charged
to [Williams] as non-returnable advances against [Williams's] royalties . . . and shall be deducted
from [Williams's] royalties when earned."  Id. ¶ 3(e).  Curington contends that Bullseye made at
least $11,339 in advances to Williams, but her first album sold only fourteen copies.  Curington
Mem. at 7.  According to Curington, then, the contract's provision that Bullseye would recoup its
costs before Williams was entitled to royalties explains why Williams never received any
royalties.  See id.  To support his proposition that Williams does not hold the copyright to "Last
Night Changed It All," Curington also points to a 2000 agreement for the rights to the song
between Williams and Mercer Street Music, Inc., a recording company.  Curington Mot., Ex. G
at 1.  This agreement states that Williams "was unsuccessful in definitively determining legal
ownership of the Master and is able to grant only those rights in law held by her as the Artist of
the Recording."  Id.

Beyond the conflicting versions of Williams's interest in the sound recording, Curington's
account of his own relationship with Bullseye -- and his interest in "Last Night Changed It All" -
- is also inconsistent.  In his affidavit, he contends that he became a partner of Bullseye in 1976
and that he remains a representative of that company.  Curington Aff. ¶¶ 2-4, 15.  Thus, he
claims that he is authorized to negotiate licenses for use of "Last Night Changed It All" as a
Bullseye representative.  See id. ¶¶ 15-16.  However, at his deposition, Curington acknowledged

_____

[6] For her part, Williams denies that this is the contract she signed with Bullseye.  Pl.'s
Statement of Material Facts ¶ 2.

that Bullseye went out of business in the mid-1980s.  Curington Dep. at 49.  He also stated that

he was involved with Bullseye only as a producer and publisher.  Id. at 17, 75.  According to

Curington's deposition testimony, he received a fifty percent interest in the publishing rights to

"Last Night Changed It All" around 1980-1981 in return for production work he performed for

Bullseye.  Id. at 25-26.

On June 22, 2004, Curington entered into a non-exclusive licensing agreement with Def

Jam for the use of "Last Night Changed It All."  Pl.'s Opp'n, Ex. 2.  Pursuant to that agreement,

Def Jam sampled "Last Night Changed It All" on "Last Night Skit," a track by the rap artist

Ghostface Killah, released on April 20, 2004.  Am. Compl. ¶ 15.  Williams says that she

discovered this sampling in or about 2005.  Id.  Williams also contends that she discovered

another unauthorized sample, which was used in the song "Late Night" by rap artist Tupac

Shakur, released by Interscope on November 26, 2002.  Id. ¶ 27.

On April 19, 2007, Williams filed a complaint against Curington and several other

defendants in this Court.  She filed an amended complaint on October 19, 2007.  Apart from

Curington, all other defendants have reached settlement agreements with Williams or have

otherwise been dismissed from the case.  Williams asserts claims against Curington for breach of

contract (Count I), copyright infringement (Count II), false light (Count III), and violation of the

right of publicity (Count IV).  On October 20, 2008, Curington filed a motion for summary

judgment, which focuses solely on Counts I and II.  Curington argues that Williams's copyright

infringement and breach of contract claims are time-barred and, in any event, that he is entitled

to summary judgment on the copyright claim because Williams never owned a copyright for the

sound recording of "Last Night Changed It All."  Curington Mot. at 8-12.

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. <u>See</u> <u>Celotex</u> <u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); <u>see</u> <u>Celotex</u>, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. <u>See</u> <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. <u>Id.</u> at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. <u>Celotex</u>, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252.

## <u>ANALYSIS</u>

### I.      Statute of Limitations

The Copyright Act sets forth a three-year statute of limitations for civil actions. Pub. L.

No. 85-313 § 115(h), 71 Stat. 633, 633 (1957).  Curington contends that the statute of limitations

for Williams's copyright infringement claims has expired because it arises from a recording

agreement that she signed in 1975.[7]  See Curington Mem. at 10-11.  In response, Williams argues

that the Copyright Act does not prohibit copyright owners from pursuing copyright claims

occurring more than three years before filing suit if the owner did not discover, and reasonably

should not have discovered the infringement before the commencement of the three-year period.

Pl.'s Opp'n at 8-9.  She also contends that "[e]ach individual sale of product containing

unauthorized samples of [her] copyrighted sound recording constitutes a separate and distinct act

of infringement."  Am. Compl. ¶ 48.

"A cause of action for copyright infringement accrues when one has knowledge of the

infringement or is chargeable with such knowledge."  Tech 7 Sys., Inc. v. Vacation Acquisition,

Inc., 594 F. Supp. 2d 76, 83 (D.D.C. 2009) (citing opinions from the Sixth and Ninth Circuits).

Here, the release date of each allegedly infringing song is an appropriate date on which to begin

---

[7] Curington also argues that the statute of limitations for Williams's breach of contract claims has expired.  Curington Mem. at 10.  Although Williams asserts her breach of contract claim against Bullseye and Curington, Am. Compl. ¶ 38, Williams also contends, contradictorily, that Curington was not a party to the contract at issue, see Williams Aff. ¶¶ 6, 14.  No person can be sued for breach of contract who is not a party to the contract.  See Cannon Eng'g Co. v. Merando, Inc., 250 F.2d 421, 422 (D.C. Cir. 1957).  Hence, Williams cannot sue Curington for breach of contract.  Even if Curington was a proper defendant, Williams's claim fails because the alleged breach occurred over thirty years ago, see Am. Compl. ¶ 11, and any breach of contract claim based on the contract between Williams and Bullseye would be time-barred, regardless of which state's law governs this dispute, see Durkin v. Nassau County Police Dep't, 175 F. App'x 405, 408 (2d Cir. 2006) (New York's six-year statute of limitations for breach of contract claims begins at the time of breach); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 991-92 (D.C. Cir. 1998) (stating general rule that under District of Columbia law, the three-year statute of limitations for breach of contract claims begins to run at the time of breach).  Accordingly, the Court will grant summary judgment in favor of Curington on the breach of contract claim (Count I).

running the statute of limitations.  See Ortiz v. Guitian Bros. Music, Inc., No. 07-CV-3897, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) ("Public distribution of the work at issue bearing copyright notices in the name of the defendant(s) which exclude the plaintiff claiming to own the subject copyright has been held to create sufficient notice to begin the running of the statute of limitations.").  "Last Night Skit" was released on April 20, 2004, within three years of the date Williams filed her original complaint -- April 19, 2007.  See Am. Compl. ¶ 15.  Thus, the copyright infringement claims regarding "Last Night Skit" -- contained in Count II of the amended complaint -- were timely filed.

"Late Night," however, was released by Interscope on November 26, 2002, about four-and-a-half years before Williams filed her complaint in this Court.  See id. ¶ 27.  Williams contends that all claims related to "Late Night" should be considered timely because she "was not a fan of Tupac Shakur, or of his genre of music, and was unaware of the sampling of her music at the time it occurred."  See Pl.'s Opp'n at 10.  Courts have been careful not to make the statute of limitations for copyright infringement too harsh -- such as by barring a claim when a plaintiff "through no fault of its own, discovers an act of infringement more than three years after the infringement occurred."  Polar Bear Prod., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004).  Nevertheless, a copyright plaintiff does have "a duty of diligence:  it is not enough that he did not discover he had a cause of action, if a reasonable man could have."  Id. at 707 (citation omitted).  Williams characterizes herself as an "internationally known singer" who has "established a pattern of exercising her rights in the sound recording [of "Last Night Changed It All"] by negotiating licensing agreements with other prominent artists within the industry."  Am. Compl. ¶¶ 6, 14.  As a self-proclaimed music industry insider with an interest in "Last Night

Changed It All," it is reasonable to conclude that Williams should have discovered the sampling in "Late Night" within three years of its release.  Therefore, Williams's copyright infringement claims arising out of sales of "Late Night" that occurred more than three years before her complaint was filed are time-barred.  However, any copyright infringement claims arising from individual sales of this song within three years of the filing of the complaint are timely.  See Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir. 2001) ("each sale or rental should be considered separately under an infringement analysis").  Hence, Count II may proceed with respect to any infringement claims -- whether related to "Last Night Skit" or "Late Night" -- arising out of sales that occurred within the three-year period prior to commencement of this action (i.e., subsequent to April 19, 2004).[8]

## II.    Copyright Ownership

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  Whether Williams owns a valid copyright to the sound recording of "Last Night Changed It All" is the central issue in Curington's motion for summary judgment.[9]  See Curington Mem. at 8-9.  The parties have presented the Court with three conflicting accounts of the ownership of the sound recording copyright.  In brief, Williams contends that she transferred her copyright interest in the recording

---

[8] The limitation on the "Late Night" claims will primarily affect a potential damages award.  See Hoste v. Radio Corp. of Am., 654 F.2d 11, 11 (6th Cir. 1981).

[9] Although Curington also discusses the ownership to the copyright for the music and lyrics of "Last Night Changed It All," Curington Mem. at 4, Williams claims only the copyright to the sound recording, not the authorship or publishing rights to the song, Williams Aff. ¶ 17.

to Bullseye in 1975.  Am. Compl. ¶ 8.  Since Bullseye allegedly breached its contract with

Williams, on or before March 1, 1977, she claims that she has retained the copyright and offers

her 2006 Certificate of Registration from the U.S. Copyright Office as evidence.  Id. ¶¶ 12-13;

Pl.'s Opp'n, Ex. 3.  Curington advances two stories, each of which he claims support his

ownership of the copyright in question.  Curington first contends that he became a partner of

Bullseye in 1976 and that he remains a representative of the company.  Curington Aff. ¶¶ 2-4,

15.  Thus, he alleges that he is authorized to negotiate licenses for the use of "Last Night

Changed It All" as a Bullseye representative.  See id. ¶¶ 15-16.  Curington also asserts that he

was involved with Bullseye as a producer and publisher, Curington Dep. at 17, 75, and received

a fifty percent interest in the publishing rights to "Last Night Changed It All" around 1980-81 in

return for production work he performed for Bullseye.  Id. at 25-26.

Curington, as the party seeking summary judgment, has not met his burden of

demonstrating the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.

Here, the facts that underlie the ownership issue are almost all disputed by the parties.

Moreover, the "undisputed facts" that Curington has set forth -- largely contained in his

deposition testimony, affidavit, and brief -- depend significantly on his credibility.  His

credibility, which Williams has called into question, is an issue for the jury, not the Court, to

resolve.  See Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

a judge.").  At a minimum, then, the 2006 Certificate of Registration that Williams has provided,

when considered in light of Curington's assertions of his own copyright ownership, raises a

"genuine issue of material fact" as to the ownership of the copyright in question.  See Fed. R.

Civ. P. 56(c).  Hence, Curington's motion for summary judgment will be denied with respect to Williams's timely copyright infringement claims.

## III.    Tort Claims

In her amended complaint, Williams also asserts claims for false light (Count III) and violation of the right of publicity (Count IV).  Although the parties do not address these claims in their briefs, the Ninth Circuit has held that state law claims may be preempted by the Copyright Act in certain circumstances.  Laws v. Sony Music Entm't, 448 F.3d 1134, 1137 (9th Cir. 2006).  To determine whether preemption applies, first the Court must "determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright."  Id.  Second, the Court "must determine whether the rights asserted under state law are equivalent to the rights contained in [the Copyright Act]."  Id. at 1137-38.  The subject matter of Williams's false light and right of publicity claims -- the sound recording of "Last Night Changed It All" -- is the same as that of her alleged copyright.  With respect to the second prong of the preemption test, the Court must compare the purposes of the "false light" and "right of publicity" causes of action with those of the Copyright Act.  The "interest in permitting a 'right of publicity' is in protecting the proprietary interest of the individual in his act in part to encourage such entertainment." Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562, 573 (1977).  Because "[b]oth copyright and the right of publicity are means of protecting an individual's investment in his or her artistic labors," they protect equivalent rights.  Laws, 448 F.3d at 1145.  In contrast, "'[t]he interest protected' in permitting recovery for placing the plaintiff in a false light 'is clearly that of reputation."  Zacchini, 433 U.S. at 573.  This is not an interest that is protected under copyright law.  See Baltimore Orioles, Inc. v. Major League Baseball Ass'n, 805 F.2d 663, 678 n.26 (7th

Cir. 1986).  Hence, judgment will be entered in favor of Curington on Count IV (violation of the

right of publicity) because that claim is preempted by the Copyright Act, but Williams's false

light claim (Count III) will be allowed to proceed.

## **CONCLUSION**

For the foregoing reasons, Curington's motion for summary judgment will be granted in

part and denied in part.  The motion will be granted with respect to Williams's copyright

infringement claims based upon conduct that occurred more than three years before her

complaint was filed (Count II) and with respect to her common law breach of contract claim

(Count I).  Judgment will also be entered in favor of Curington on Count IV (violation of the

right of publicity) and that claim will be dismissed.  However, the Court will deny Curington's

motion with respect to Williams's timely copyright infringement claims (Count II), which may

proceed along with her false light claim (Count III).  A separate Order accompanies this

Memorandum Opinion.


                                          _____/s/_____
                                          JOHN D. BATES
                                          United States District Judge


Dated:   August 24, 2009